Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| El Pueblo de Puerto Rico **Recurrido** v. Daivone S. Carbo Rivera **Peticionario** | TA2025CE00626 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez Civil Núm. ISCR202101019-ISCR202101020 Sobre: ART. 182 y ART. 195 C.P. |
|---|---|---|

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Rivera Torres y el Juez Marrero Guerrero

Hernández Sánchez, Juez Ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 13 de noviembre de 2025.

El 16 de octubre de 2025, el Sr. Daivone Salvador Carbo Rivera (señor Carbo o peticionario) compareció ante nos mediante una *Petición de Certiorari* y solicitó la revisión de una *Sentencia* que se emitió el 12 de agosto de 2025 y se notificó el 18 de agosto de 2025 por el Tribunal de Primera Instancia, Sala Superior de Mayagüez (TPI). Mediante el aludido dictamen, el TPI dejó sin efecto la Resolución de desvío que dictó el 1 de marzo de 2022 al amparo de la Regla 247.1 de Procedimiento Criminal, 34 LPRA Ap. II, R.247.1, a favor del señor Carbo. En consecuencia, ordenó la reclusión de este último.

Por los fundamentos que expondremos a continuación, *denegamos* el recurso de epígrafe.

I.

El 28 de mayo de 2021, el Ministerio Público radicó varias denuncias por infracciones a los Arts. 108 (Agresión), 177 (Amenazas), 182 (Apropiación Ilegal Agravada) y 195 (Escalamiento

Agravado) del Código Penal de Puerto Rico contra el señor Carbo.[1] Tras evaluar las denuncias, el TPI determinó causa únicamente por violaciones a los Arts. 182 y 195 del Código Penal de Puerto Rico, y no causa con relación a los restantes cargos. Celebrada la vista preliminar, se reiteró la determinación de causa respecto a los delitos imputados bajo los Arts. 182 y 195, por lo que el 14 de septiembre de 2021, el Ministerio Público presentó las acusaciones correspondientes por dichas infracciones.[2]

El juicio en su fondo fue señalado para celebrarse el 1 de marzo de 2022. No obstante, en esa fecha, el señor Carbo formuló una alegación de culpabilidad por el delito contemplado en el Art. 195 en su modalidad de tentativa, así como por el delito bajo el Art. 182 del Código Penal de Puerto Rico. Esto se llevó a cabo como parte del procedimiento para acogerse al programa de desvío conforme a la Regla 247.1 de Procedimiento Criminal, *supra*.

En virtud de ello, el TPI dictó las correspondientes Resoluciones al amparo de la mencionada regla.[3] En estas, aceptó la alegación preacordada, declaró culpable al acusado por ambos delitos y dispuso la suspensión de los procedimientos para permitir su participación en el programa de desvío. En consecuencia, impuso las siguientes condiciones generales:

1. Cooperará en todo momento con el funcionario del Programa de Drug Court TASC para la evaluación de su caso, contestará todas las preguntas y suplirá, veraz y fielmente, la información que se le solicite.

2. No encubrirá sus actividades, no se ocultará ni mentirá acerca de las mismas. No entorpecerá en forma alguna la investigación y supervisión de su caso.

3. Cuando le sea requerido, el probando ingresará en el Programa para la Rehabilitación que se le designe en

---

[1] *Véase*, Anejos I al IV del apéndice del recurso.
[2] *Véase*, Anejos VI y VII del apéndice del recurso.
[3] *Véase*, Anejos XXI y XXII del apéndice del recurso.

la fecha, hora y sitio que el Tribunal o el funcionario del Programa Drug Court TASC le indique.

4. Permanecerá en dicho tratamiento hasta que finalice el mismo. Cualquier cambio de Programa que se necesite para su rehabilitación deberá autorizarse expresamente por el Tribunal, a petición del funcionario del Programa Drug Court TASC.

5. Mientras el probando se encuentre en el Programa de Rehabilitación cooperará con las autoridades de la institución y se someterá a todos aquellos exámenes médicos, psiquiátricos, psicológicos y de laboratorio que el Tribunal o el funcionario del Programa Drug Court TASC le indicare como necesarios para lograr su rehabilitación y que, además, se entiendan necesarios para el proceso de supervisión y así determinar si se están cumpliendo las presentes condiciones.

6. El probando permanecerá residiendo dentro de la jurisdicción territorial del Tribunal Superior Sala de Mayagüez, en la dirección provista. En el momento en que decida trasladar su residencia deberá solicitar permiso al funcionario del Programa Drug Court TASC.

7. No podrá abandonar el territorio de Puerto Rico sin permiso expreso del Tribunal.

8. No podrá visitar, administrar o trabajar en negocios donde se dediquen única y exclusivamente a la venta de bebidas alcohólicas. No podrá estar presente en centros de dudosa reputación ni en sitios donde se lleven a cabo juegos de azar prohibidos por Ley.

9. No hará uso de bebidas alcohólicas.

10. Se abstendrá de usar drogas narcóticas u otros estupefacientes salvo aquellos recomendados por prescripción médica.

11. No se asociará con personas que tengan reputación de usuarios(as) de sustancias controladas o vendedores(as) de éstas.

12. Siempre que el Programa al que se acoja se lo permita, realizará gestiones de empleo y/o estudios. Se mantendrá trabajando y/o estudiando todo el tiempo que sea posible. Siempre informará al funcionario del Programa Drug Court TASC de todo cambio de empleo, de estudios o cesantía de las razones para ello.

13. El probando consentirá a que, de ser acusado de cometer un delito grave, se celebre conjuntamente con la vista de determinación de causa probable, la vista sumaria inicial. La determinación de causa probable de la comisión de un nuevo delito, será causa suficiente para, en ese momento, revocar provisionalmente los beneficios de la libertad a prueba.

Además, expuso las siguientes condiciones especiales:

1. Recibirá tratamiento en Hogar CREA de Mayagüez, hasta completar el mismo y le sea conferida la Carta y Certificación.

2. Una vez culminado el Programa de CREA se mantendrá residiendo con su señora madre en la Carr. 348, Camino El Quenepo, Sector Quebrada Grande, Mayagüez, PR.

3. Restricción domiciliaria será de 7:00pm a 6:00am.

4. Se realizarán supervisiones nocturnas por el Oficial de Enlace de la Policía de Puerto Rico cuando sea necesario y el Tribunal así lo autorice.

5. Cualquier gestión de estudios o trabajo deberá evidenciarlo al Especialista de Servicios Psicosociales.

6. De arrojar positivo al uso de sustancias controladas o de incurrir en cualquier violación de las condiciones impuestas por el Tribunal, el Programa de la Sala Especializada en Casos de Sustancias Controladas en el descargo de sus responsabilidades hará participe al Tribunal de la conducta asumida por el participante para la acción que en derecho proceda.

7. En el caso de perder contacto con su Especialista de Servicios Psicosociales, evadir la jurisdicción o incumplir con cualquiera de las condiciones impuestas por el Honorable Tribunal, se allanará a que se inicie el proceso de revocación.

8. Cumplirá con las citas de seguimiento que se le requieran a la oficina del Programa de la Sala Especializada en Casos de Sustancias Controladas.

9. No se asociará con personas que consuman sustancias controladas y no debe acudir a lugares de dudosa reputación. No visitará lugares donde se vendan o usen bebidas alcohólicas exclusivamente.

10. No visitará lugares donde se venden o usen bebidas alcohólicas exclusivamente.

11. Se le tomarán pruebas toxicológicas cuando el personal de Tratamiento y del Tribunal así lo estimen pertinente para corroborar que se mantiene fuera del consumo de sustancias.

Finalmente, expresó lo siguiente:

Si el probando incurriera en violación de cualquiera de las condiciones antes señaladas o de cualquier otra que se le imponga durante el proceso, o si incurriera en cualquier violación de las leyes vigentes en Puerto Rico o los Estados Unidos, o incurriera en cualquier conducta antisocial o reñida con la moral, conllevará la revocación de esta Resolución y se procederá a dictar Sentencia.

Posteriormente, el 17 de septiembre de 2024, se celebró una vista de seguimiento a la cual comparecieron el señor Carbo, junto a su representación legal, y el Ministerio Público, como parte del proceso continuo para evaluar su desempeño en el programa de desvío. A dicha vista también acudieron la Sra. Diana Hernández, Coordinadora del Programa Drug Court, y la Sra. Isaliz Ramos Ortiz (señora Ramos), quien funge como Oficial Alterno de Recuperación.

De la *Minuta* de esta vista surge que, durante el interrogatorio por parte de la fiscal, la señora Ramos declaró bajo juramento que los ajustes del señor Carbo en el programa "no eran los esperados".[4] Explicó que este había expresado en múltiples ocasiones su deseo de no continuar internado en Hogar CREA, lo cual impedía su cumplimiento adecuado con las obligaciones del programa. Además, indicó que el señor Carbo había enfrentado "varias situaciones con el director y demás participantes", aunque estas fueron atendidas. Asimismo, testificó que el participante no estaba tomando la medicación provista por la clínica de APS desde el mes de agosto. A preguntas del Tribunal, la señora Ramos reiteró que el señor Carbo había manifestado en diversas ocasiones su intención de abandonar

---

[4] *Véase*, Anejos XL del apéndice del recurso.

el programa y que, específicamente el 11 de septiembre de 2024, expresó que prefería "cumplir lo que le falta en la cárcel".

Ante dicho testimonio, el Tribunal se dirigió directamente al señor Carbo señalándole que se habían realizado múltiples gestiones para evitar su ingreso a una institución carcelaria. Asimismo, le indicó que, si su deseo era ser encarcelado, así se ordenaría, pero que la reclusión no sería únicamente por el tiempo restante en el programa, sino por el término originalmente pactado, que en este caso ascendía a cuatro (4) años, comenzando de inmediato. Luego de ello, el Tribunal suspendió brevemente la vista para permitir que el participante reflexionara y dialogara con su representación legal.

Al retomar la vista, el Tribunal expresó que interpretaría las manifestaciones del señor Carbo a la señora Ramos como expresadas en un momento de coraje. No obstante, advirtió al participante que para la próxima vista de seguimiento el informe debía reflejar un progreso favorable. Se le indicó claramente que, de persistir el incumplimiento, se ordenaría su ingreso carcelario. Finalmente, el Tribunal señaló una nueva vista de seguimiento para el 12 de noviembre de 2024.

No obstante, previo a que llegara la fecha de la próxima vista de seguimiento, el 7 de octubre de 2024, el Programa de la Sala Especializada en Casos de Sustancias Controladas "Drug Courts", Área de Mayagüez, presentó una *Moción Informativa Urgente*.[5] En esta, le informó al TPI que el señor Carbo abandonó el tratamiento interno del Programa Hogar CREA a eso de las 6:40 p.m. el 6 de octubre de 2024, por lo cual incumplió con la condición especial de recibir tratamiento en un programa interno que se impuso conforme a la *Resolución* emitida el 1 de marzo de 2022 sobre el privilegio del

---

[5] *Véase*, Anejo XLII del apéndice del recurso.

procedimiento de desvío, según la Regla 247.1 de Procedimiento Criminal, *supra.*

Asimismo, ese mismo día, a saber, el 7 de octubre de 2024, "*Drug Courts*" presentó un *Informe de Violación de Condiciones.*[6] Allí se consignaron las diversas y reiteradas infracciones cometidas por el señor Carbo a las condiciones impuestas para poder continuar participando del programa de desvío conforme a la Regla 247.1 de Procedimiento Criminal, *supra.* Particularmente, el informe describió lo siguiente:

- El 15 de agosto de 2023 se realizó una vista de seguimiento donde se presentó al Honorable Tribunal una solicitud de cambio de tratamiento de uno interno a uno ambulatorio, luego de evaluada y aquilatada la prueba el Tribunal acogió la recomendación y ordenó la modificación de la resolución emitida el pasado el 1 de marzo de 2022 para que el Sr. Carbo Rivera se beneficie de un tratamiento ambulatorio siempre y cuando cumpla con las demás estipulaciones de la Resolución.

- El día 17 de agosto de 2023 fue su última visita en la Clínica de Salud Mental APS, no obstante personal de la clínica le envió medicamentos a su farmacia de preferencia para su trastorno de salud mental y mediante corroboración de evidencia no fue hasta el miércoles 8 de noviembre de 2023 que pasó por la misma para el recogido. Esto por alegaciones del propio participante que le obstaculizaba laborar y oficios del día.

- El día 4 de octubre de 2023 se le realizó muestra toxicológica como seguimiento dentro del Programa en el Centro de Tratamiento Ambulatorio ASSMCA arrojando positivo a sustancias controladas (Buprenorfina). Ante este positivo lo negó de primera instancia, luego aceptó los hechos.

- El día 25 de octubre de 2023 participó de una actividad que se llevó a cabo en el Centro de Tratamiento Ambulatorio ASSMCA en Mayagüez y una vez culminada se procedió a tomarle prueba toxicológica arrojando positivo a sustancias controladas (cocaína). El participante inicialmente lo negó y posteriormente aceptó haber hecho consumo de las sustancias al haber ingerido bebidas alcohólicas.

- El día 31 de octubre de 2023 fue su vista de seguimiento, y verbalizó antes de entrar a sala que

---

[6] *Véase*, Anejo XLI del apéndice del recurso.

"sabía que iba a ingresar a la cárcel" por tal razón decidió consumir la sustancia durante esos días.

- El día 8 de noviembre de 2023 nuevamente arrojó positivo a sustancias controladas (cocaína) y el participante decidió expresarse con el equipo interdisciplinario y solicitó que se realizaran las gestiones para ingresar a un programa de retirada asistida "détox", se realizaron las gestiones con el Hospital Pavía en el pueblo de Yauco. Indicó que entendía no podía realizar los ajustes requeridos estando en la comunidad.

- El día 15 de diciembre de 2023 participante acudió al Centro de Tratamiento ambulatorio a recibir terapia, manifestó tener dolor estomacal, este se rehusó a tomarse muestra toxicología y abandonó el Centro. Posteriormente acudió al Centro a realizarse la muestra arrojando positivo a sustancias controladas (cocaína). Ante esta situación, el equipo Interdisciplinario recomendó que el participante se beneficie de Programa Interno, por tanto, se realizaron las gestiones para su ingreso al Programa Hogar Crea. Luego de esto el participante se mantuvo dentro del Programa de tratamiento realizando los ajustes necesarios.

- El 19 de diciembre de 2023 ingresó nuevamente al Programa Hogar CREA en Las Américas para pasar por el proceso de retirada asistida "détox" y luego ser reubicado en hogar de la Región de Mayagüez.

- El día 11 de septiembre de 2024 en entrevistas sostenidas con el participante manifestó que no deseaba continuar recibiendo tratamiento interno, dicha información la notificamos al Honorable Tribunal el día 17 de septiembre de 2024 en la vista de seguimiento. Además, informamos que según se desprende del informe de ajuste y progreso del Programa Hogar Crea, el participante le habla faltado el respeto al Director del Hogar y algunos residentes, por dicha situación el participante fue sometido a terapia de apoyo y pare.

- El 30 de septiembre de 2024 fue reubicado en el Hogar CREA de Cabo Rojo por las situaciones presentas en el Programa de San Germán. El día 6 de octubre de 2024 recibimos información del personal Programa Hogar Crea, que el participante optó por abandonar a las 6:41pm aproximadamente de la tarde, fue orientado para que no abandonara, hizo caso omiso de la orientación.

Tomando en consideración las instancias antes expuestas, el programa indicó que el señor Carbo incumplió con las siguientes condiciones especiales y generales:

Violación de condición especial:

Núm. 1 "Recibirá tratamiento en Hogar de Mayagüez hasta completar el misma y le sea conferida la Carta y Certificación...

Núm. 6 "De arrojar positivo a sustancias controladas o de incurrir en cualquier violación de las condiciones impuestas por el Tribunal. El Programa de la Sala Especializada en casos de Sustancias (Drug Court) en el descargo de sus responsabilidades hará participe al Tribunal de la conducta asumida por el participante para la acción que en derecho procedan"

Violación de las condiciones generales:

Núm. 1 "Cooperará en todo momento con el funcionario del Programa "Drug Courts" para la evaluación de su caso..."

Núm. 3 "Cuando le sea requerido, el probando ingresará en el programa para la rehabilitación que se le designe en la fecha, hora y sitió que el Tribunal o el funcionario del Programa "Drug Courts" le indique".

Núm. 4 "Permanecerá en dicho tratamiento hasta que finalice el mismo...".

Núm. 9 "No hará uso de bebidas alcohólicas".

Núm. 10 "Se abstendrá de usar drogas narcóticas u otros estupefacientes salvo aquellos recomendados por prescripción médica".

Por los motivos antes expuestos, solicitó iniciar el proceso de revocación de libertad a prueba del peticionario.

Así las cosas, el TPI señaló una Vista Sumaria Inicial (VSI), para el mes de octubre de 2024. Tras varios trámites procesales que conllevaron a la reprogramación de la vista, el 20 de febrero de 2025, el señor Carbo se allanó a consolidar la VSI con la Vista Final de Revocación (VFR).[7] Consecuentemente, el Tribunal realizó una determinación de causa para revocación provisional del privilegio y señaló la VFR para el 22 de abril de 2025.

Luego de varias recalendarizaciones y otros trámites adicionales, el 12 de agosto de 2025, se celebró la VFR. De la *Minuta* surge que, durante la misma, la señora Ramos compareció a testificar.[8] A preguntas del Ministerio Público, en síntesis, declaró

---

[7] *Véase*, Anejo LII del apéndice del recurso.
[8] *Véase*, Anejo LVIII del apéndice del recurso.

que el señor Carbo incurrió en diez (10) incumplimientos a las condiciones impuestas, detallando lo mismos ante el TPI.

Evaluados los testimonios vertidos con relación al incumplimiento del peticionario con las condiciones especiales y generales impuestas en la Resolución del 1 de marzo de 2022 conforme a la Regla 247.1 de Procedimiento Criminal, *supra*, ese mismo día, a saber, el 12 de agosto de 2025, el TPI dictó una *Sentencia* que se notificó el 18 de agosto de 2025, mediante la cual dejó sin efecto la *Resolución* de desvío que dictó el 1 de marzo de 2022 al amparo de la Regla 247.1 de Procedimiento Criminal, *supra*, a favor del señor Carbo.[9] En consecuencia, ordenó la reclusión de este último.

En desacuerdo con este dictamen, el 26 de agosto de 2025, el peticionario presentó una solicitud de reconsideración.[10] Atendida esta solicitud, el 16 de septiembre de 2025, el TPI dictó y notificó una *Resolución y Orden* denegando la solicitud de reconsideración.[11] Aún inconforme, el 16 de octubre de 2025, el señor Carbo presentó el recurso de epígrafe y formuló los siguientes señalamientos de error:

> **ERRÓ EL HONOBRALE TRIBUNAL DE PRIMERA INSTANCIA AL REVOCAR LA RESOLUCIÓN DICTADA EL 1 DE MARZO DE 2022, A PESAR QUE LA RECOMENDACIÓN DE LOS COMPONENTES DEL PROGRAMA FUE EL INGRESO DEL PROBANDO EN EL CENTRO DE TRATAMIENTO RESIDENCIAL DE VARONES DE ASSMCA DONDE RECIBIRÁ EL TRATAMIENTO INTEGRAL QUE REQUIERE Y QUE NO SOLO CUBRE EL ÁREA DE USO DE SUSTANCIAS CONTROLADAS, SINO TAMBIEN EL ÁREA DE SALUD MENTAL, PARA, DE ESA FORMA, CUMPLIR CON LOS POSTULADOS DE LA JUSTICIA TERAPÉUTICA Y EL MANDATO CONSTITUCIONAL DE REHABILITACIÓN.**
>
> **ERRÓ EL JUEZ DEL TPI AL REVOCAR LA RESOLUCIÓN DICTADA A DAIVONE S CARBO RIVERA EL 1 DE MARZO DE 2022 AUN CUANDO EL PETICIONARIO CUMPLIÓ SATISFACTORIAMENTE MÁS DEL TÉRMINO MÍNIMO IMPUESTO EN LA RESOLUCIÓN.**

---

[9] *Véase*, Anejo LVII del apéndice del recurso.
[10] *Véase*, Anejo LIX del apéndice del recurso.
[11] Véase, Anejo LXII del apéndice del recurso.

Atendido el recurso, el 20 de octubre de 2025, emitimos una *Resolución* concediéndole a la parte recurrida un término de diez (10) días para expresarse en cuanto al recurso de epígrafe y la regrabación presentada. Oportunamente, la parte recurrida presentó un *Escrito en Cumplimiento de Orden* y negó que el TPI cometiera los errores que el peticionario le imputó. Con el beneficio de la comparecencia de ambas partes, procedemos a atender el asunto ante nos. *Veamos.*

II.

El *certiorari* es el vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda corregir un error de derecho cometido por un tribunal inferior. *Torres González v. Zaragoza Meléndez,* 211 DPR 821, 846-847 (2023). Los tribunales apelativos tenemos la facultad para expedir un *certiorari* de manera discrecional. Íd., pág. 847. Esta discreción se define como "el poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción". *García v. Padró,* 165 DPR 324, 334 (2005). Asimismo, discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justa. Íd., pág. 335. Ahora bien, la aludida discreción que tiene este foro apelativo para atender un *certiorari* no es absoluta. Íd. Esto ya que no tenemos autoridad para actuar de una forma u otra, con abstracción total al resto del derecho, pues ello constituiría abuso de discreción. Íd. Así, "el adecuado ejercicio de la discreción judicial esta inexorable e indefectiblemente atado al concepto de la razonabilidad". Íd.

La Regla 40 del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 42, págs. 59-60, 215 DPR ____ (2025), enmarca los criterios que debe evaluar este tribunal al expedir un auto de *certiorari.* La aludida regla establece lo siguiente:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Ninguno de los criterios de la Regla 40 del Reglamento del Tribunal de Apelaciones, s*upra*, es determinante por sí solo para el ejercicio de jurisdicción, y tampoco constituyen una lista exhaustiva. *García v. Padró*, supra. La norma vigente es que un tribunal apelativo solo intervendrá con las determinaciones discrecionales del Tribunal de Primera Instancia, cuando este haya incurrido en arbitrariedad, craso abuso de discreción o en un error en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Pueblo v. Rivera Santiago*, 176 DPR 559, 581 (2009).

III.

Nos corresponde justipreciar si debemos ejercer nuestra facultad discrecional al amparo de los criterios enmarcados en la Regla 40 del Tribunal de Apelaciones, *supra.* Luego de examinar el expediente ante nuestra consideración y la regrabación presentada a la luz de los criterios de la Regla 40 del Tribunal de Apelaciones, *supra,* no identificamos razón por la cual este Foro deba intervenir en el dictamen recurrido. Ello, ya que no se presentan ninguna de

las situaciones que allí se contemplan. Recordemos que nuestro ordenamiento jurídico nos brinda la discreción de intervenir en aquellos dictámenes interlocutorios o postsentencia en los que el TPI haya sido arbitrario, cometido un craso abuso de discreción o cuando, de la actuación del foro, surja un error en la interpretación o la aplicación de cualquier norma procesal o de derecho sustantivo. Reiteramos que en el recurso que aquí atendemos no se nos ha demostrado que haya alguno de estos escenarios.

IV.

Por los fundamentos antes expuestos, ***denegamos*** el recurso de epígrafe.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís<br>Secretaria del Tribunal de Apelaciones